IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHANTZ PARKER,** | ) | |
| Petitioner, | ) | Civil Case No.: 7:19cv00568 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **BERNARD BOOKER,** | ) | By: Michael F. Urbanski |
| Respondent. | ) | Chief United States District Judge |

Chantz Parker, a Virginia inmate proceeding with counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2015 Pittsylvania County criminal convictions. This matter is before the court on respondent's motion to dismiss. After reviewing the record, the Court concludes that respondent's motion must be granted. Parker procedurally defaulted two of his claims, with no showing of cause and prejudice, and the state courts' adjudication of his third claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was the adjudication based on an unreasonable determination of the facts.

I.

Following a trial on August 12 through August 14, 2015, a jury sitting in Pittsylvania County Circuit Court convicted Parker and co-defendant Ralphael Brown of armed burglary in violation of Virginia Code § 18.2-89, attempted robbery in violation of Virginia Code §§ 18.2-26 and 18.2-58, wearing a mask in public in violation of Virginia Code § 18.2-422, and three counts of using a firearm during the commission of a felony in violation of Virginia

Code § 18.2-53.1.[1] The jury then sentenced Parker to 20 years in prison for the burglary, 2 years for the attempted robbery, 3 years for the first use of a firearm in commission of a felony, 5 years each on the other two convictions for use of a firearm in commission of a felony, and an $800 fine for wearing a mask, resulting in a total sentence of 35 years plus $800.[2] (Va. Ct. App. R., Vol. 2, hereafter "Vol. 2," at 414–16.) Following consideration of a presentence report and a second sentencing hearing, the court entered judgment on the verdict, imposing 35 years in prison, plus adding and suspending 3 years for a period of post-release supervision, suspending the fine, and ordering restitution of $500 jointly with Brown and another defendant, Jamison Canavan, who had pled guilty in a separate proceeding. (Va. Ct. App. R., Vol. 1, hereafter "Vol. 1," at 13–15.)

The Virginia Court of Appeals summarized the evidentiary background of the case, in the light most favorable to the Commonwealth, the prevailing party, as follows:

> Around 11:15 p.m. on March 26, 2014, Mark and Janet Moore heard an unexpected knock at their front door. Through a window, they saw a young man wearing a black hoodie. The man in the hoodie told the Moores that his car had broken down. He then asked to use a telephone. Feeling uneasy, Mark Moore went to his bedroom and retrieved his handgun. He returned to the entrance way and began to unlock the door.
>
> As Moore turned the deadbolt, the man in the hoodie forced his way through the front door, knocking him into a coffee table and pushing Moore's wife over a recliner. Two masked men, carrying "assault"-style rifles entered into the home as well.

---

[1] The trial court struck the evidence on one count of maliciously shooting into an occupied dwelling, and the jury acquitted both defendants of another count of maliciously shooting into an occupied dwelling and of malicious wounding. (Va. Ct. App. R., Vol. 2, at 411–12.)

[2] The 35-year sentence was the lowest sentence the jury could give, as the 13 years for the firearm charges were mandatory sentences, and the statutory range for armed burglary was 20 years to life, while the statutory range for attempted robbery was 2 to 10 years. The maximum possible sentence for wearing a face mask was 5 years in prison, but the jury chose the option of imposing only a fine.

The man wearing the hoodie shot Moore through the thigh. As he fell, Moore fired at one of the masked men. Although Moore was not sure that he struck his target, the rifle fell from the targeted man's hands. The man in the hoodie continued firing, grazing Moore's scalp. As the intruders regrouped and fled, Moore fired another shot at them.

The home invasion lasted twenty to twenty-five seconds. None of the intruders demanded anything or attempted to take any property from the home during the encounter.

After midnight the same evening, Raphael (sic) Brown and [Parker] arrived at Annie Penn Hospital's emergency room in Reidsville, North Carolina [near the Virginia border, approximately 40 minutes from Danville]. Brown had multiple gunshot wounds to his arms and chest. [Parker] had a gunshot wound in the back of his left calf. Both men told the police that they were hit by stray gunfire when shooting broke out at a party in Reidsville. No reported shooting incidents in Reidsville were noted for that evening. Neither Brown nor [Parker] could recall where the party was held, names of other party guests or who hosted the party.

Both men denied involvement in the home invasion.

Brown and [Parker] were indicted on a number of felonies arising out of the home invasion, including armed burglary, attempted robbery, and wearing a mask in public. Each man was also indicted on three counts of using a firearm during the commission of a felony.

After the Commonwealth moved to try the two men jointly, [Parker] filed a motion to sever. At a pretrial hearing, [Parker] argued that a joint trial might impede his ability to introduce alibi evidence if Brown offered a conflicting alibi. He also argued that the evidence against Brown, which he perceived to be substantially stronger, would implicate him by association in a joint trial. [Parker] further suggested that any minor contradictions between his and Brown's statements to police might be used to impeach him. The trial court denied [Parker's] motion, observing that [Parker] had at most demonstrated potential prejudice, not actual prejudice. [Parker] renewed his motion immediately before trial. The court again denied his motion.

3

> The Commonwealth also filed pretrial motions to procure the attendance of several witnesses from North Carolina, including the custodians of records for both Annie Penn Hospital and Wake Forest Baptist Medical Center, where Brown's surgery was performed. [Parker] objected to orders granting these motions, asserting that they represented "an attempt to introduce confidential medical records." He renewed his objection to the issuance of a new round of certificates procuring their attendance after the trial was continued.
>
> Brown raised a similar objection to the introduction of the medical records during the trial itself, arguing that their disclosure "would be in violation of his medical privacy rights under HIPAA[3] and . . . any sort of state HIPAA as well." [Parker] joined in this objection, expressly incorporating Brown's arguments as well as his handwritten objections on the original certificates. The court overruled their objections, observing that even if admission of the records violated HIPAA, the appropriate remedy was not exclusion in the criminal trial but a separate action for damages.
>
> Wendy Gibson, a forensic scientist, testified at trial that the projectiles that hit Brown were consistent with the unusual ammunition that Moore used against the intruders. The shells in Moore's revolver each contained three disc-shaped slugs and a number of spherical pellets. Police found four slugs embedded in the doors and walls at the Moores' residence. Surgeons found two more slugs and a pellet embedded in Brown. Gibson compared these projectiles with Moore's remaining shells and available literature on the ammunition. She opined that the slugs and pellet removed during Brown's surgery shared the characteristic dimensions and weight as the slugs and pellets removed from Moore's unfired ammunition.
>
> FBI Special Agent David Church testified that Brown's cell phone records indicated that someone used Brown's phone to place a call from within the cellular sector that covers the Moores' residence at 11:27 p.m. that evening. Special Agent Church opined as an expert on cell site analysis that the phone must have been in the general area of the Moores' home at the time.

---

[3] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320d – 1320d-9 (2016).

4

> The Commonwealth also presented evidence showing that bloodstains matching Brown's DNA profile were found in a vehicle that belonged to the man in the hoodie. Police conducted a photo lineup at which the Moores identified Jamison Canavan as the man in the hoodie. Police learned that Canavan's father had traded in a SUV at a local dealership a few months after the home invasion. A witness who knew Canavan remembered seeing him drive the SUV on a regular basis. After locating the new owner, police searched the vehicle and discovered bloodstains on the driver's seat and seatbelt connector as well as the front passenger's seatbelt connector. Forensic scientist Patricia Taylor developed a DNA profile for these bloodstains which she matched to Brown's DNA profile. She ultimately opined that the odds of Brown coincidentally matching the DNA profiles in either of these bloodstains was greater than one in 7.2 billion.
>
> Evidence adduced at trial proved that someone used [Parker's] phone to send two text messages at 11:27 p.m. from the cellular sector covering the Moores' home. There was no forensic evidence placing [Parker] in either the Moores' residence or the recovered vehicle. The projectile that hit [Parker] was not compared with the ammunition from Moore's gun.
>
> At the close of the Commonwealth's case-in-chief, both defendants made motions to strike the evidence. [Parker] moved to strike the armed burglary charge, arguing that no evidence proved his specific intent to commit robbery when he entered the Moores' residence. [Parker] also moved to strike the attempted robbery charge on the same grounds. [Parker] further moved to strike all of the charges on the grounds that there was "absolutely no evidence" that he participated in the home invasion." The trial court denied these motions.

Parker v. Commonwealth, No. 0113-16-3, slip op. at 1–5 (Va. Ct. App. Feb. 21, 2017)

(original footnotes omitted).

On appeal, Parker challenged the trial court's failure to sever his trial from Brown's under Virginia Code § 19.2-262.1, admission of his and Brown's medical records under Virginia Code § 32.1-127.1:03, and sufficiency of the evidence to prove that Parker was a

5

perpetrator of the crimes or to prove an attempted robbery. The court ruled against Parker on each issue and affirmed his convictions. Parker, slip op. at 13.

On the objection to joining Parker's trial with Brown's, the appellate court noted that § 19.2-262.1 required the government to demonstrate good cause for joinder, and then the defendant could seek severance on a showing of actual prejudice. Parker argued that he was prejudiced by statements of Brown and by the evidence against Brown, namely Brown's cell phone records, the slugs and pellets removed from Brown during surgery, and Brown's DNA in Canavan's car. The court found no prejudice to Parker, because he and Brown had given the same alibi, namely that they were with each other at a party in Reidsville. Because Parker claimed to be with Brown, evidence showing Brown's location was equally admissible against Parker, whether the cases were tried together or separately. Parker, slip op. at 5–7.

Regarding the objection to introduction of medical records without their consent, the appellate court held that the Virginia Code strictly limited the circumstances under which a person's medical records could be obtained, in order to protect that person's privacy. However, the statute did not contemplate a person being able to keep relevant records out of a court proceeding, because it provided procedures for obtaining medical records, even over a patient's objection, by subpoena or search warrant. Thus, the court found no error on this issue. Id. at 8–10.

In challenging the sufficiency of the evidence to support the elements necessary for conviction of attempted robbery, Parker failed to challenge on appeal the sufficiency of the evidence to support the armed burglary conviction. Because the same element, intent to commit robbery, was necessary to support the armed burglary conviction and the attempted

6

robbery conviction, when Parker did not appeal both, the court held that proof of intent to commit robbery became the law of the case, citing Neff v. Commonwealth, 63 Va. App. 413, 758 S.E.2d 87 (2014). Parker, slip op. at 11–12.

Finally, the appellate court held that the circumstantial evidence was sufficient to support Parker's involvement in the crime beyond a reasonable doubt. The court could not say that no reasonable juror could find Parker guilty beyond a reasonable doubt. Id. at 12–13.

The Supreme Court of Virginia refused Parker's petition for appeal on December 6, 2017 and denied his petition for rehearing on February 2, 2018. (Id. at 568–69.) Parker did not petition the United States Supreme Court for certiorari, and the time in which to do so expired May 3, 2018. Parker filed a state petition for habeas corpus on June 8, 2018, raising a Sixth Amendment constitutional challenge to the joinder of his trial with Brown's trial, objecting to introduction of the medical records, challenging the denial of his motion for judgment notwithstanding the verdict, and objecting to failure to dismiss use of a firearm in commission of malicious wounding when he was acquitted of the underlying malicious wounding. (Habeas R., at 54–69.)

On August 28, 2018, the Supreme Court of Virginia dismissed Parker's habeas petition, finding that he had used the petition as a substitute for appeal, in violation of the rule in Brooks v. Peyton, 210 Va. 318, 321–22, 171 S.E.2d 243, 246 (1969). (Id. at 71.) The court denied his petition for rehearing on November 19, 2018. (Id. at 74.)

Parker timely filed his § 2254 petition on August 16, 2019, raising three issues:

(1) Failure to sever his trial from co-defendant Brown's trial in violation of his constitutional rights;

(2) Violation of his constitutional rights to privacy and due process by introducing medical records in violation of HIPAA; and

(3) Constitutionally insufficient evidence to support convicting Parker as one of the offenders on March 26, 2014.

## II.

Before a petitioner may be granted federal habeas relief, he is required to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement means that a petitioner must fairly present the substance of his federal constitutional claim to the highest state court and give that court the opportunity to apply controlling legal principles to the facts relevant to the claim. Anderson v. Harless, 459 U.S. 4, 6 (1982). Fairly presenting the substance of one's claim means presenting the same operative facts and controlling legal principles to the state court. Kasi v. Angelone, 300 F.3d 487, 501–02 (4th Cir. 2002). Even when a petitioner has exhausted his claims by presenting them to the state's highest court, if the state court expressly bases its dismissal of a claim on the petitioner's violation of a state procedural rule, then that procedural rule may provide an independent and adequate ground for dismissal of the claim; when such an independent and adequate state ground for dismissal is present, the federal habeas claim is also procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). The first two of Parker's claims are procedurally defaulted under these standards.

## A.

Although Parker objected to his trial being joined with Brown's, in the trial court and on direct appeal, his argument was based on Virginia's joinder statute, Virginia Code § 19.2-262.1, a state law, not on federal constitutional grounds. Thus, in that litigation, he failed to present the controlling federal constitutional law to the state's highest court. Federal habeas relief is not available for questions of state law interpretation and application. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). By failing to assert at trial and on appeal the specific federal constitutional right he claims was violated, Parker failed to exhaust his state court remedies on this claim during the direct appeal process. Gray v. Netherland, 518 U.S. 152, 162–63 (1996).

Parker did allege violation of federal constitutional rights in his state habeas petition. However, the state habeas court rejected the petition on the grounds that a writ of habeas corpus cannot be employed as a substitute for an appeal, citing Brooks v. Peyton, 210 Va. at 321–22, 171 S.E.2d at 246. This is an independent and adequate state law ground for dismissing Parker's claim, thus establishing a procedural default for purposes of federal habeas review. Jeffers v. Allen, No. 1:15cv808, 2016 WL 8731439 at *3 (E.D. Va. Mar. 18, 2016); Hilton v. Dir. of the Dep't of Corr., No.2:16cv135, 2016 WL 8285664 at *3 (E.D. Va. Dec. 7, 2016).

Even if the state court had considered Parker's petition as a petition for habeas corpus, the failure to raise the constitutional objection during the state trial and appeal would procedurally bar him from raising the new issue during state habeas. The Supreme Court of Virginia has long held that issues not raised precisely on direct appeal cannot be raised in

9

state habeas. Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974). Likewise, the Fourth Circuit Court of Appeals has repeatedly recognized that the rule in Slayton is an adequate and independent ground for decision. Fisher v. Angelone, 163 F.3d 835 (4th Cir. 1998).

When such procedural default exists, federal habeas review cannot succeed unless the petitioner shows both cause for the default and actual prejudice as a result of the claimed federal violation. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Parker has not alleged cause for procedural default, and the court is not aware of anything in the record to demonstrate cause. Even if cause were present, however, Parker is clearly not prejudiced by the failure to consider his constitutional challenge to the joinder of his trial with Brown's. To show prejudice necessary to overcome procedural default, the petitioner must show that the error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). There is no such error of constitutional dimensions in the present case.

The United States Supreme Court recognized a constitutional violation in cases where one co-defendant's out-of-court statement, which constitutes hearsay in another defendant's case, implicates that defendant in the crime and cannot be tested by cross-examination because the co-defendant never testifies during trial. Bruton v. United States, 391 U.S. 123, 136 (1968). That is not what happened in this case. Both Brown and Parker claimed that they were at a party in Reidsville, North Carolina, with each other, when they got shot. They denied being involved in the invasion of the Moores' home. Neither of their statements implicated the other in the charged crime. However, their exculpatory statements had some

inconsistencies, such as the race and gender of the person who drove them to the hospital. Significantly, the statements were not being offered for the proof of the matter asserted; the government was not trying to establish that Brown and Parker were at a party in Reidsville. Therefore, the statements were offered for non-hearsay purposes, specifically, to show that the stories were fabricated, likely untrue, because of differences in details that one would not expect to differ if they were telling the truth. Such use of out-of-court statements for non-hearsay purposes has been allowed, notwithstanding the rule in Bruton. Tennessee v. Street, 471 U.S. 409, 413 (1985).

Because there was no constitutional error in the joinder of the trials, Parker has not been prejudiced by the procedural default of this issue. Accordingly, the court will dismiss this claim.

### B.

Parker's constitutional objections to the medical records introduced into evidence have also been procedurally defaulted. His argument at trial and on direct appeal was based on violation of Virginia Code § 32.1-127.1:03, a state statute. Even his state habeas claim relied on the state statutory violation. (Habeas R., at 58.) In the federal petition before the court, counsel has creatively attempted to tie the Virginia Code section and the federal HIPAA to a constitutional right of privacy protected by the due process clause of the Fourteenth Amendment. However, the fact that individual personal privacy may have been one of the concerns behind both statutes does not automatically transform violations of the statute into constitutional privacy and due process issues. Only the statutory arguments were previously made to the state court.

11

Although the medical records constitutional claim was never presented to the state's highest court, it is clear that Parker would no longer be able to raise that issue before the state court. His direct appeal has ended, and any new state habeas petition would be prohibited as second and successive. In such a case, the federal court will treat the claim as if it has been exhausted, but because the claim would be procedurally barred under state law if raised now, the claim is simultaneously exhausted and defaulted. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

As with the previous claim, Parker has offered no cause for his procedural default, and the court finds no cause in the record. Nor has Parker shown any prejudice of a constitutional dimension. Assuming, without deciding, that HIPAA and Virginia Code § 32.1-127.1:03 protect a constitutionally-based right to privacy, the right is not absolute. The statute provides for production of the records in response to subpoenas, grand juries, and search warrants, establishing a recognition that privacy interests are balanced with other interests. Even at the constitutional level, privacy is not absolute; the privacy of a man's home and personal papers can be invaded with a search warrant based on probable cause. U.S. Const. amend. IV. The medical records at issue were properly obtained by search warrant, and their use against the defendants raised no cognizable constitutional federal issue. Accordingly, the court will also dismiss this claim.

### III.

Parker's challenge to the sufficiency of the evidence was properly raised before the state's highest court during Parker's direct appeal. Accordingly, this claim survives the procedural hurdles and will be addressed on the merits. A federal habeas court may grant relief on a state claim adjudicated on the merits in state court only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In the present case, the written opinion of the Court of Appeals of Virginia is the last reasoned state court opinion addressing sufficiency of the evidence, as the Supreme Court of Virginia summarily denied Parker's appeal. Accordingly, a federal habeas court must "look through" the Supreme Court of Virginia's refusal of the appeal and examine the reasoning of the court of appeals. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). The deferential standard of review prescribed by § 2254(d) applies to the habeas court's review of the state court of appeals' opinion.

A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable

13

application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Further, the state court need not cite or even be aware of the controlling Supreme Court cases, so long as "neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Harrington v. Richter, 562 U.S. at 98.

The controlling Supreme Court case for constitutional challenges to sufficiency of the evidence to support a conviction is Jackson v. Virginia, 443 U.S. 307, 322 (1979). The Court in Jackson identified the relevant question in such cases as:

> [W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 319. The Court of Appeals of Virginia did not cite the Supreme Court's Jackson decision, but applied the same standard:

> When reviewing the denial of a motion to strike the evidence, we must uphold the conviction unless it was plainly wrong or lacked evidence to support it. . . . We review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. . . . A reviewing court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. . . . Rather, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Parker, slip op. at 11 (quotation marks and citations omitted). Clearly, the appellate court's legal standard was not contrary to controlling Supreme Court precedent.

Neither did the Virginia appellate court unreasonably apply the law to the facts found by the jury. As the Court noted in Jackson, the responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" is the province of the jury as factfinder. Jackson, 443 U.S. at 319. To respect the factfinder's role, a reviewing court must view the evidence in the light most favorable to the prevailing party, which in this case was the government. The facts set forth by the Virginia Court of Appeals and quoted previously on pages 2–4 herein are fully supported by the transcripts of the proceedings. Summarizing the conclusions drawn by the jury from those facts, the court highlighted the following facts and inferences: Parker and Brown arrived at the hospital in Reidsville approximately 40 minutes after the invasion of the Moores' home in Danville; under normal driving conditions at that time of night, the hospital is 40 minutes away from Danville. Both men claimed they were at a party together in Reidsville when they were shot, but neither could provide basic details that would enable police to confirm their story. Further, cell phone records of both men indicated cell phone activity on the tower in Danville, covering the sector where Moore lived, approximately ten minutes after the shots were fired in Moore's home. DNA evidence placed Brown in another co-defendant's vehicle, and forensic evidence determined that the ammunition in Brown's body was the same type of unusual ammunition that Moore had used to defend himself. From all of this, the Virginia Court of Appeals concluded that a rational juror could have found, beyond a reasonable doubt, that Parker was the second masked intruder at the

15

Moore home invasion. On federal habeas review, the court cannot say that the state appellate court's decision was an unreasonable application of the controlling law. Nor can the court say that the state court's determination of the facts was unreasonable, based upon the trial transcripts. Accordingly, the court will dismiss this claim.

### IV.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. Gonzalez v. Thaler, 565 U.S. 134, 140–41 (2012). Parker has not made a substantial showing of the denial of a constitutional right.

### V.

For the foregoing reasons, the court will grant Respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

**ENTER:** This 31st day of July, 2020.

_____
Chief United States District Judge